BOARD OF POLICE COMMISSIONERS OF THE CITY OF NEW HAVEN ET AL. *v.* FREEDOM OF INFORMATION COMMISSION OF THE STATE OF CONNECTICUT ET AL. (11033)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and MENT, Js.

Argued November 8, 1983—decision released February 7, 1984

*Frederick P. Leaf,* special assistant corporation counsel, with whom, on the brief, was *Charles Albom,* corporation counsel, for the appellants (plaintiffs).

*Constance L. Chambers,* assistant general counsel, with whom was *David J. Morrissey,* for the appellees (defendants).

SHEA, J. After we granted certification for review pursuant to General Statutes (Rev. to 1981) § 51-197b,[1] the plaintiffs, who are the city of New Haven and its board of police commissioners, appealed from a judgment dismissing their appeal of an order of the state freedom of information commission (FOIC) invalidating the discharge of a police officer, the defendant Louis W. Gold. The FOIC and the trial court concluded that,

---

[1] The applicable statute at the time we granted certification was General Statutes (Rev. to 1981) § 51-197b, which provided as follows: "All appeals, which may be taken from administrative decisions of officers, boards, commissions or agencies of the state or any political subdivision thereof shall be taken to the superior court. Said court, after a hearing thereon, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. So much of any special act as is inconsistent herewith is repealed. The provisions of chapter 902 to the contrary notwithstanding, except as provided in section 46a-94 and except in respect to any appeal from a final judgment or action of said court concerning an administrative decision of the commissioner of revenue services which appeal shall be taken to the supreme court in accordance with provisions of said chapter 902, there shall be no right to further review except to the supreme court by certification for review, upon the vote of two judges of the supreme court so to certify and under such other rules as the judges of the supreme court shall adopt. The procedure on such appeal to the supreme court shall, except as otherwise provided herein, be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the superior court unless modified by rule of the judges of the supreme court. An appeal from any judgment entered by the court of common pleas in such case prior to July 1, 1978, may be taken pursuant to section 52-6a, revised to 1975."

See Public Acts 1981, No. 81-416, § 2 (11).

at the disciplinary hearing before the police commissioners on January 8, 1979, there was a violation of Gold's right to require that the discussion which led to his discharge be held at an open meeting in accordance with General Statutes § 1-18a (e) (1).[2] In this appeal the plaintiffs claim that § 1-18a (e) (1) should not be construed, as the FOIC and the trial court held, to prohibit executive sessions from which the public is excluded whenever the public officer or employee whose employment, performance or dismissal is under consideration has requested an open meeting. Although we decline to adopt such a construction of the statute, we are persuaded from our review that Gold failed to make an effective request as required by § 1-18a (e) (1) that the deliberations of the commissioners which preceded his discharge should be held in public. Accordingly, we find error and remand for further proceedings in accordance with part III of this opinion.

The underlying facts are not disputed. On January 2, 1979, Gold, a patrolman in the New Haven police force, was served with a notice charging him with a

[2] General Statutes § 1-18a (e) provides as follows: " 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting; (2) strategy and negotiations with respect to pending claims and litigation to which the public agency or a member thereof, because of his conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; (3) matters concerning security strategy or the deployment of security personnel, or devices affecting public security; (4) discussion of the selection of a site or the lease, sale or purchase of real estate by a political subdivision of the state when publicity regarding such site, lease, sale, purchase or construction would cause a likelihood of increased price until such time as all of the property has been acquired or all proceedings or transactions concerning same have been terminated or abandoned; and (5) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-19."

violation of a departmental rule and summoning him to appear at a hearing before the board of police commissioners on January 8, 1979. Gold, both in a letter prepared by his attorney and prior to the hearing, stated that it was his "election, intent and desire that such hearing be open to the public."

At the proceeding on January 8, 1979, Gold's attorney repeated his request for an "open hearing." The chairperson of the board declared that the hearing would be open to the public since the rules followed by the board so required if the officer involved made such a request. After the testimony was completed and counsel for the police department and for the defendant had presented their arguments, the chairperson announced that the board would recess for deliberations. No objection was raised to this proposal by the defendant or his counsel.

The board left the hearing room and entered a conference room where the charges against Gold were considered and voted upon. The board then returned to the hearing room where it was announced that the members had unanimously found Gold guilty of the charge.

The board next proceeded in open session to hear argument from counsel with respect to the appropriate form of disciplinary action to be taken. At the conclusion of argument the chairperson, again without objection, declared that the board would retire for the purpose of deciding what sanction should be imposed. The board went back to the conference room and, after some further deliberations, voted unanimously to dismiss officer Gold from the police department. This decision was also publicly announced by the chairperson after the board had returned to the hearing room.

On January 29, 1979, counsel for Gold filed a complaint with the FOIC in the form of a letter alleging

that his client had requested an open meeting upon the disciplinary charges; that police commissioners, the chief of police and the prosecuting attorney had been seen "on various occasions during the hearing and its recesses alternating [sic] entering and leaving the same room"; and that, in deliberating on the penalty to be imposed, the board had considered "facts and evidence from the complainant's personnel file which were not admitted as evidence nor introduced during the hearing." A supplementary letter was sent to the FOIC on February 28, 1979, in which Gold stated that he had requested a public meeting; that the board had conducted portions of the meeting in executive session at which all persons were excluded with the exception of the prosecutor, the chief of police, "one Robert Burcholz and possibly others"; and that during these sessions the board considered material not introduced at the hearing.

The FOIC concluded that Gold's letter of January 4, 1979, requesting that "such hearing be open to the public" was sufficient to inform the board of his desire to have its deliberations in his case take place at an open meeting; that no provision of the freedom of information act made "a vote of a public agency concerning the dismissal of a public employee a proper purpose for an executive session; and that the failure of the board to deliberate and vote in open session constituted a violation of § 1-18a (e) (1) and § 1-21." No findings were made with respect to the claims that persons other than the commissioners had been present during portions of the executive sessions and that the board had considered material not presented at the hearing.

I

In support of their claim that the Freedom of Information Act should be construed not to require that the deliberations and votes of public agencies in person-

nel matters be conducted at an open meeting, the plaintiffs cite cases which have reached such a result in other jurisdictions where similar legislation has been considered. *Dupont Circle Citizens Assn.* v. *District of Columbia Board of Zoning Adjustment,* 364 A.2d 610, 613–14 (D.C. App. 1976); *Sullivan* v. *Northwest Garage & Storage Co.,* 223 Md. 544, 165 A.2d 881 (1960). These decisions[3] held that the so-called "sunshine" laws under consideration, which contained general provisions that "all meetings" of the public agencies involved must be open to the public did not apply to the conduct of deliberations at executive sessions held after the conclusion of the public hearing. None of these statutes contained a provision comparable to § 1-18a (e) (1), which includes the discussion of certain personnel matters among the purposes for which executive sessions are authorized, but expressly permits the individual concerned to "require that discussion to be held in an open meeting." Although we have perceived a legislative intention reflected in the Freedom of Information Act "to balance the public's right to know what its agencies are doing with the governmental and private needs for confidentiality," we have also recognized that the general rule is disclosure and that exceptions will be narrowly construed. *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328–29, 435 A.2d 353 (1980). Section 1-18a (e) (1) is clearly applicable to the circumstances of this case and must be construed to have prohibited the board from conducting their deliberations which led to Gold's dismissal at a meeting closed to the public provided that he properly notified the board of his intention to have those deliberations open to the public.

---

[3] Another case cited by the plaintiffs; *State Department of Pollution Control* v. *State Career Service Commission,* 320 So. 2d 846, 848–49 (Fla. App. 1975); held only that the Florida "government in the sunshine law"; Florida Statutes Annot. § 286.011; was inapplicable to a quasi-judicial agency such as that involved here.

## II

In considering whether Gold effectively sought to open the deliberations of the board to the public, it is significant that his letter to the board requested simply that his *"hearing* be open to the public." (Emphasis added.) The request made by his lawyer at the commencement of the proceeding was also for nothing more than an "open hearing." The word "hearing" normally is used to refer to a proceeding at which proofs and arguments are presented prior to a determination of the issues. Webster, Third New International Dictionary. In common parlance there is a clear distinction between the hearing and the deliberations which lead to a decision.

More persuasive than mere verbal analysis in considering whether Gold actually wished to have the deliberations of the board take place in public and sufficiently communicated this desire is the fact that on the two occasions when the board declared a recess for deliberations in its conference room no objection was raised, although Gold and his counsel were fully aware of what was transpiring. It also appears that even in his initial complaint filed with the FOIC, although Gold claimed to have "requested that such meeting be open and public," the gist of his grievance was that the board had allowed various persons, including the police chief, to enter the conference room during the course of deliberations. It was not until an amendment was filed some time later that any complaint was made that the board had "conducted portions of the meeting in executive session."

The FOIC found that the original letter of January 4, 1979, requesting that the hearing be held in public was sufficient to inform the board that Gold wanted all of the discussions concerning his employment and

dismissal to be held at an open meeting. In view of the ambiguity inherent in the use of the word "hearing" in the letter and by Gold's attorney at the outset of the proceeding before the board as well as the absence of any objection when the recesses were declared, we conclude that the finding of the FOIC as to the sufficiency of Gold's request was clearly erroneous.

## III

The failure of the FOIC to make any findings upon the claims of Gold that during their deliberations the board of police commissioners considered such evidence as his personnel file and some comments which had not been presented at the open hearing, makes it necessary to remand the case for further proceedings to determine those issues. General Statutes § 1-21[4] requires that meetings of all public agencies be open to the public except for "executive sessions as defined in subsection (e) of section 1-18a." The section referred to, so far as pertinent to this case, defines "executive sessions" to mean "a meeting of a public agency at which the public is excluded for one or more of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion to be held at an open meeting . . . ." General Statutes (Rev. to 1981) § 1-18a (e). Even if Gold had made no request at all, § 1-21 must be construed to mandate that the "hearing" portion of an administrative proceeding, where evidence and arguments are presented, be open to the public. The statute permits "executive sessions" only for the purposes specified and, in the context of this case, did not authorize the presentation of additional evidence during the "discussion" of Gold's case by the

---

[4] General Statutes § 1-21 provides, in part, as follows: "The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public."

board. The FOIC is expressly obliged to review any alleged violation of §§ 1-21 and 1-18a, the statutory provisions involved. General Statutes § 1-21j (d).[5]

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[5] General Statutes § 1-21j (d) provides, in part, as follows: "The commission shall, subject to the provisions of sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, promptly review the alleged violation of said sections and issue an order pertaining to the same."