BOARD OF EDUCATION OF THE TOWN OF BOZRAH *v.*
STATE BOARD OF EDUCATION ET AL.
(11277)

DALY, FOTI and LAVERY, Js.

Argued January 19—decision released March 30, 1993

*William R. Connon,* for the appellant (plaintiff).

*Nina F. Elgo,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (named defendant et al.).

*Gregory T. D'Auria,* with whom, on the brief, were *Saranne P. Murray* and *Linda L. Yoder,* for the appellee (defendant Norwich board of education).

DALY, J. The plaintiff Bozrah board of education (Bozrah) challenges the trial court's decision to dismiss its appeal from the decision of the defendant state board of education's impartial hearing board requiring Bozrah to provide funding for the education of W.

The facts are not in dispute. W, who was born on July 26, 1973, resided with his mother in Norwich until

1979. W's mother developed cancer and made arrangements with Loretta Gagnon of Norwich to care for W. W's mother died in February, 1980. Gagnon continued to care for W, and W's father agreed to pay her. When W's father failed to make the expected payments, Gagnon successfully sought payments for W's care from his mother's social security benefits. On September 13, 1983, W was committed to the custody of the department of children and youth services (DCYS) and was placed with Gagnon, who had become a duly licensed foster parent. At this time, Gagnon began receiving payments from DCYS for the care of W. W's father's parental rights have never been terminated.

W has been a special education student since 1987. In February, 1988, he was placed in Mount St. John residential facility in Deep River and resided there until June, 1990. W's father lived in the Crestwood Retirement Home in Norwich until June 6, 1989, when, upon his release from Backus Hospital, he was placed in the Fitchville Home, a nursing care facility in Bozrah. The Norwich board of education (Norwich) had provided educational services to W through January, 1990. On March 12, 1990, it denied school accommodations to W because his father no longer resided in Norwich. Norwich also sought credit for services retroactively to June, 1989, when the father moved to Bozrah. On June 18, 1990, Bozrah refused to enroll W in its school system. On October 29, 1990, W was placed in Covenant House Shelter in Norwich.

In August, 1990, W, through his appointed surrogate, petitioned both Bozrah and Norwich for residency hearings pursuant to General Statutes § 10-186. The parties agreed to waive their rights to local hearings pursuant to General Statutes § 10-186 (b) (1) and proceeded directly before the state board of education's impartial hearing board pursuant to General Statutes § 10-186 (b) (2). That board found that Bozrah was

responsible for providing for W's education because W's father had resided in Bozrah since June, 1989. Bozrah appealed to the trial court, which dismissed the appeal after determining that the hearing board's decision was not unreasonable, arbitrary, illegal or an abuse of discretion.

Bozrah appeals from the dismissal claiming that General Statutes §§ 10-253 and 10-76d do not require Bozrah to educate W. Bozrah also claims that the impartial hearing board improperly placed the burden of proof on both Bozrah and Norwich to establish W's ineligibility for school accommodations in their school systems. We affirm the judgment of the trial court.

I

Bozrah first claims that the impartial hearing board should have found that Norwich is responsible for funding W's education because General Statutes § 10-253 governs W's placement. We disagree and conclude that the hearing board properly determined that General Statutes § 10-76d (e) (2) governs W's placement.

Bozrah's appeal is controlled by the Uniform Administrative Procedure Act, General Statutes § 4-183 et seq. Our scope of review on administrative appeals is limited; *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986); and it is not our function "to retry the case or to substitute [our] judgment for that of the administrative agency." *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). We may disturb the hearing board's factual findings only if they are clearly erroneous. Practice Book § 4185. Our "ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of discretion. . . . Conclusions of law reached by the administrative agency must stand if [we determine]

that they result from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* 212 Conn. 100, 104, 561 A.2d 429 (1989); *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 120, 584 A.2d 1172 (1991).

"Upon appeal the function of the court is to examine the record of the hearing before the board to determine whether the conclusions reached are supported by the evidence that was before it. The question is not whether the trial court would have reached the same conclusions but whether the record before the board supports the board's action." *O'Donnell* v. *Police Commission,* 174 Conn. 422, 426, 389 A.2d 739 (1978). We agree with the state board of education, DCYS, and Norwich that General Statutes § 10-253 (d) is inapplicable because the statute does not apply to special education students like W, and because Gagnon was paid and expected to be paid for her services.

Because W has been a special education student since 1987, this case is not governed by § 10-253. The pertinent part of § 10-253 (d) provides "children not requiring special education who are residing in any facility or home as a result of a placement by a public agency, other than a local or regional board of education . . . shall be entitled to all free school privileges accorded to resident children of the school district in which they then reside." There is no question that when W was placed in Mt. St. John in 1988 he was a special education student. The outcome of this case is, therefore, not controlled by § 10-253.

Furthermore, § 10-253 (d) governs the placement of children who are "residing with relatives or nonrelatives, when it is the intention of such relatives or non-

relatives and of the children or their parents or guardians that such residence is to be permanent, *provided without pay* and not for the sole purpose of obtaining school accommodations . . . ." (Emphasis added.) The hearing board properly determined that this section was not satisfied because Gagnon clearly intended to be paid for W's care, and was paid for it by DCYS when she became a foster parent. The statute requires that the people with whom the child is residing *and* the child's parents or guardians intend the residence to be provided without pay. Thus, the fact that W's father did not intend to pay for W's care is not determinative because Gagnon did intend to be paid. For these reasons, Bozrah's reliance on § 10-253 is unwarranted.

Therefore, the trial court properly applied General Statutes § 10-76d to this case. This statute provides that where, as here, "such child requires special education, the local or regional board of education under whose jurisdiction the child would otherwise be attending school" shall be financially responsible for the child's education. General Statutes § 10-76d (e) (2).

"Generally speaking, the presumption is that the words of a statute are used in their ordinary sense. Nonetheless, there should be inquiry as to the legislative intent, involving a consideration of the language used, its context, pertinent antecedent legislative history, related subject matters with which the language deals, its operation as it may be interpreted, the conditions and circumstances under which it was enacted, and all other matters calculated to throw light on the subject." 1 B. Holden & J. Daly, Connecticut Evidence (1988) § 50. According to the history of § 10-76d (e) (2), the legislature intended that the funding of special education programs for children under the care of a state agency should be the responsibility of the board of education of the school district where the parents of the child live. 24 H.R. Proc., Pt. 21, 1981

Sess., pp. 7101, 7109; 24 S. Proc., Pt. 17, 1981 Sess., p. 5376; 25 H.R. Proc., Pt. 15, 1982 Sess., pp. 5502, 5503.

The policy behind this clause was discussed in both chambers of our legislature. Subdivisions (e) (2) and (e) (3) did not exist under the version of § 10-76d in effect before the 1981 amendments. Without these subdivisions, the statute provided that "children who live in a state facility were the educational responsibility of the town in which they are living" and so "districts in which there are large state facilities are obliged to front large amounts for the education of the children in that facility attending their schools in the town, receiving reimbursements the following year." 24 S. Proc., Pt. 17, 1981 Sess., p. 5376, remarks by Senator Cornelius P. O'Leary; see 24 H.R. Proc., Pt. 21, 1981 Sess., p. 7101, remarks by Representative Geil Orcutt. Under the provisions of the revised version, "the financial responsibility for these children is to be . . . distributed to the districts in which the parents of the children live." 24 S. Proc., Pt. 17, 1981 Sess., p. 5376. Thus, the hearing board properly determined that the "board of education under whose jurisdiction the child would otherwise be attending school" refers to the district in which W's father resides, which in this case is Bozrah.

Furthermore, the commissioner of education and the state board of education have accepted and consistently construe the clause "the board of education under whose jurisdiction the child would otherwise be attending school" to refer to the board in whose district the child's parent resides. In re R.P., State Board of Education Decision No. 86-31 (October 1, 1971). We traditionally accord great deference to an agency's interpretation of a statute that the agency is responsible for administering. E.I.S., Inc. v. Board of Registration, 200 Conn. 145, 148, 509 A.2d 1056 (1986). An

"agency's practical construction of the statute, if reasonable, is high evidence of what the law is. . . ." (Citations omitted; internal quotation marks omitted.) *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* supra, 106; *Board of Education* v. *State Board of Labor Relations,* supra, 120. Therefore, when W's father became a resident of Bozrah, responsibility for the educational needs of W became Bozrah's as directed by General Statutes § 10-76d.

## II

We now address Bozrah's second claim that the hearing board improperly allocated the burden of proof to both Bozrah and Norwich. Bozrah claims that because Norwich first denied school accommodations, it must prove W's ineligibility first. Only after Norwich has satisfied its burden, according to Bozrah, should Bozrah have to present its case. We find this claim to be without merit because the outcome would have been the same no matter who first shouldered the burden of proving W's ineligibility for funding.

If the local hearings had been held pursuant to General Statutes § 10-186, both Bozrah and Norwich as "parties claiming ineligibility for school accommodations" would have had to carry "the burden of proving such ineligibility for school accommodations." Each would have borne "the burden of proving such ineligibility by a preponderance of the evidence." General Statutes § 10-186 (b) (1).[1] In this case, however, the parties waived the two separate local hearings and agreed

---

[1] General Statutes (Rev. to 1991) § 10-186 (b) (1) was amended by Public Acts 1992, No. 92-170 to provide: "The party claiming ineligibility for school accommodations shall have the burden of proving such ineligibility by a preponderance of the evidence, except in cases of denial of schooling based on residence, the party denied schooling shall have the burden of proving residency by a preponderance of the evidence." This amendment does not affect the present case.

to bring the matter before the state board of education for a joint hearing. The hearing board placed the burden on each town to prove W's ineligibility for funding because both towns claimed he was ineligible. The hearing board did not state whether it addressed Bozrah's or Norwich's claim first. General Statutes § 10-186 (b) (2) does not address this issue specifically.

Nevertheless, even if the hearing board had first required Norwich to prove that it was not responsible for funding W's education, the outcome would have been the same. Bozrah was not able to prove that General Statutes § 10-253 governs this case. Rather, the hearing board properly agreed with Norwich that General Statutes § 10-76d applied because of the circumstances of W's placement. Section 10-76d requires the town of the parent's residence to provide school funding. W's father moved to Bozrah in 1989 and Bozrah, therefore, became responsible for funding his education pursuant to § 10-76d. Bozrah failed to meet its burden of showing it is not responsible for funding W's education under the statute while Norwich satisfied its burden of proving that it was not statutorily responsible for W's education after June, 1989, because W's father no longer resided in Norwich. Thus, even if, as Bozrah argues, Norwich should first have been responsible to prove W's ineligibility for its school accommodations, the outcome of the hearing would not have been different.

The judgment is affirmed.

In this opinion the other judges concurred.