GLASTONBURY EDUCATION ASSOCIATION *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

MARILYN CAMPBELL, COMMISSIONER OF EDUCATION ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(12493)

HEIMAN, FREEDMAN and SCHALLER, Js.

Argued March 29—decision released July 12, 1994

---

*Colleen M. Murphy,* commission counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant in each case).

*William J. Dolan,* for the appellee (plaintiff in the first case).

*Ralph E. Urban,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellee (plaintiff in the second case).

HEIMAN, J. The defendant[1] freedom of information commission (FOIC) appeals from the judgments[2] of the trial court sustaining the plaintiffs'[3] appeals from the defendant's decisions. On appeal, the defendant claims that the trial court improperly found that the arbitra-

[1] The defendants in these actions are the freedom of information commission (FOIC); Kathleen Stack, the editor of the Glastonbury Citizen; James Hallas, the publisher of the Glastonbury Citizen; and the Glastonbury Citizen. Only the FOIC appealed. We refer to the FOIC as the defendant.

[2] The plaintiffs appealed separately to the trial court and the appeals were subsequently consolidated.

[3] The plaintiffs in these actions are the Glastonbury Education Association; Marilyn Campbell, the acting commissioner of education; and members of the panel conducting arbitration hearings between the Glastonbury education association and the Glastonbury board of education, Peter Blum, Leonard Rovins and Donald Deneen.

tion proceedings between the Glastonbury education association (GEA) and the Glastonbury board of education (board) were not subject to the Freedom of Information Act (FOIA); General Statutes § 1-15 et seq.; and in doing so failed to follow the applicable scope of judicial review. We affirm the judgment of the trial court.

The following facts are necessary for a proper resolution of this appeal. In 1990, the GEA and the board were negotiating a new contract. On December 8, 1990, an arbitration hearing was held by a panel of three arbitrators pursuant to General Statutes § 10-153f (c).[4] The purpose of the hearing was to allow the GEA and

[4] General Statutes § 10-153f (c) provides in pertinent part that after mediation of a dispute has failed: "If each party has notified the commissioner of the name of the arbitrator it has selected, within five days after such notification, the commissioner shall select a third arbitrator, who shall be an impartial representative of the interests of the public in general. . . . At the hearing each party shall have full opportunity to submit all relevant evidence, to introduce relevant documents and written material, and to argue on behalf of its positions.

* * *

"(4) After hearing all the issues, the arbitrators . . . shall, within twenty days, render a decision in writing, signed by a majority of the arbitrators . . . which states in detail the nature of the decision and the disposition of the issues by the arbitrators . . . . The written decision shall include a narrative explaining the evaluation by the arbitrators . . . of the evidence presented for each item upon which a decision was rendered by the arbitrators . . . and shall state with particularity the basis for the decision as to each disputed issue and the manner in which the factors enumerated in this subdivision were considered in arriving at such decision, including, where applicable, the specific similar groups and conditions of employment presented for comparison and accepted by the arbitrators . . . and the reason for such acceptance. . . . At any time prior to the issuance of a decision by the arbitrators . . . the parties may jointly file with the arbitrators . . . any stipulations setting forth contract provisions which both parties agree to accept. . . . The parties shall submit to the arbitrators . . . their respective positions on each individual issue in dispute between them in the form of a last best offer. The arbitrators . . . shall resolve separately each individual disputed issue by accepting the last best offer thereon of either of the parties, and shall incorporate in a decision each such accepted individual last best offer and an explanation of how the total cost of all offers accepted was considered. . . ."

the board to present a "last best contract" offer to the panel. See General Statutes § 10-153f (c) (4). Kathleen Stack, the editor of the Glastonbury Citizen, sought to attend the hearing. The panel members unanimously decided that the meeting was not open to the public because it constituted strategy or negotiations with respect to collective bargaining. See General Statutes §§ 1-18a and 1-21 (a). Stack, along with James Hallas, the publisher of the Glastonbury Citizen, filed a complaint concerning the panel's action with the FOIC. The FOIC found "that although the respondent panel's hearings may and often do lead to further negotiation, the actual arbitration hearing, in this case, during which the parties offered evidence and argument, constituted a meeting within the meaning of § 1-18a (b), which should have been open to the public pursuant to § 1-21."

The plaintiffs appealed to the trial court pursuant to General Statutes §§ 1-21i (b)[5] and 4-183 (a)[6] asserting that the FOIC improperly interpreted the definition of "meeting" in General Statutes § 1-18a (b).[7] The trial

---

[5] General Statutes § 1-21i provides in pertinent part: "(b) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, 1-20a and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission.

\* \* \*

"(d) Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. . . . The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. . . ."

[6] General Statutes § 4-183 (a) provides in pertinent part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. . . ."

[7] General Statutes § 1-18a provides in pertinent part: "(b) 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication

court determined that the FOIA is not applicable to arbitration hearings because the term meeting in General Statutes § 1-21[8] and defined in § 1-18a (b) does not encompass arbitration proceedings. It relied on two opinions of the state board of labor relations; *In the Matter of Branford Board of Education,* Dec. No. 2274 (1984), and *In the Matter of New Canaan Board of Education,* Dec. No. 2400 (1985), and an opinion of the defendant FOIC; *Radford* v. *Trumbull,* Docket No. FIC 79-246 (1980). The trial court found that the arbitration proceeding fell into the category of "strategy or negotiations with respect to collective bargaining" as stated in § 1-18a (b). The defendant FOIC appealed to this court.

An appeal from an FOIC decision is governed by the Uniform Administrative Procedure Act (UAPA). *Board of Pardons* v. *Freedom of Information Commission,* 19 Conn. App. 539, 546, 563 A.2d 314, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989); see General Statutes § 4-166 et seq. "[W]here a party appeals pursuant to the jurisdictional grant of the UAPA, the agency action is measured by the standards contained within the UAPA. *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 441, 363 A.2d 103

---

by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall *not* include: Any meeting of a personnel search committee for executive level employment candidates; any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business; *strategy or negotiations with respect to collective bargaining;* a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency; an administrative or staff meeting of a single-member public agency; and communication limited to notice of meetings of any public agency or the agendas thereof. . . ." (Emphasis added.)

[8] General Statutes § 1-21 provides in pertinent part: "(a) The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. . . ."

(1975). We, therefore, review the merits of the defendants' claims in the context of the limited scope of judicial review afforded by the UAPA to determinations made by an administrative agency.[9] *Griffin Hospital v. Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . The present appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered in accordance with the [UAPA]." (Citations omitted; internal quotation marks omitted.) *Pet v. Dept. of Health Services,* 228 Conn. 651, 660–61, 638 A.2d 6 (1994). Therefore, we must determine whether the trial court improperly determined that the FOIA does not apply to these arbitration proceedings.

Our courts have not decided whether the term "meeting" as found in General Statutes § 1-18a (b) applies

---

[9] General Statutes § 4-183 (j) provides in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings."

to these arbitration proceedings. The FOIC decided in a previous decision that the FOIA does not apply to arbitration hearings, which is contrary to its decision in this case. *Radford* v. *Trumbull,* supra, Docket No. FIC 79-246. We usually defer to the administrative agency's decision when interpreting a statute. See *Borent* v. *State,* 33 Conn. App. 495, 499, 636 A.2d 392 (1994); *Board of Education* v. *State Board of Education,* 30 Conn. App. 720, 726, 622 A.2d 614 (1993), aff'd, 228 Conn. 433, 636 A.2d 378 (1994). Here, the FOIC has interpreted the statute in a manner inconsistent with its previous interpretation of the same statute. See *Radford* v. *Trumbull,* supra.[10] Therefore, we must determine, without our usual deference, whether arbitration proceedings held pursuant to General Statutes § 10-153f (c) (4) are subject to the FOIA.

An examination of the language of the statute does not reveal the intent of the legislature as to whether the arbitration proceedings are exempt from the FOIA. It is facially unclear from the statutory language whether arbitration proceedings are subject to the FOIA under General Statutes § 1-21. "Generally, 'when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). Further, we must interpret a statute according to its plain and ordinary meaning. *Mazur* v. *Blum,* 184 Conn. 116, 118, 441 A.2d 65 (1981). 'When the language of a statute is unclear, we may ascertain the intent of the legislature by look-

---

[10] The dissent argues that we are incorrect in asserting that the decision of the FOIC in *Radford* v. *Trumbull,* supra, Docket No. FIC 79-246, is inconsistent with its decision here. That assertion is neither logically nor legally correct. In *Radford,* the FOIC said that the public was not entitled to access the written last best offer. There is no legal difference between a written document and the same information in oral form. Constancy and logic demand that they be treated in the same manner.

ing beyond the language to the statute's legislative history and the purpose that the statute was intended to serve.' *Weinberg* v. *ARA Vending Co.,* 223 Conn. 336, 341, 612 A.2d 1203 (1992)." *West Hartford Interfaith Coalition* v. *Town Council,* 228 Conn. 498, 508, 636 A.2d 1342 (1994).[11]

The legislative history clearly demonstrates that the legislature intended the term meeting not to apply to any part of the collective bargaining process.[12] The House debate discloses that the statute should not apply to "sessions concerning collective bargaining." 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3912. Further, the House debate on an amendment to the proposed bill emphatically stated that "the concept of collective bargaining [was] out of the 'right to know law.' " Id., p. 3896. The Connecticut Civil Liberties Union also filed a policy statement with the Senate that stated that the FOIA should not apply when a legislative, executive or administrative body considers and negotiates employment contracts. 18 S. Proc., Pt. 5, 1975 Sess., p. 379. Therefore, on the basis of the legislative history, collective bargaining hearings held pursuant to General Statutes § 10-153f (c) (4) are not subject to the FOIA.[13]

---

[11] While the dissent argues that we need not look to the legislative history because the statute is facially clear, it then, by its argument, concedes that in fact the statute is not clear by asserting that events that are precluded from public scrutiny do, in fact, come into play in the course of proceedings that are statutorily exempt from the FOIA. Thus, the concession in the dissent that the statute applies to those instances is facially inconsistent with the premise that hearings of this nature are not exempt.

[12] We agree with the dissent that, but for the existence of the statutory exemption, the hearing would be subject to the provisions of the statute.

[13] The dissent argues in footnote 1, that the legislative history does not support the conclusion of the court. The dissent points to the legislative history wherein the legislators stated that the FOIA does not apply to collective bargaining. It then leaps, without benefit of citation of authority, to the conclusion that the last best offer procedure is not part of the collective bargaining scheme. This is inconsistent with the provisions of the Teacher Negotiation Act; General Statutes § 10-153a et seq.; is the vehicle by which this appeal arises.

This interpretation is also in accord with the intent of the last best offer stage of the Teacher Negotiation Act (TNA). General Statutes § 10-153a et seq. The TNA gave teachers binding arbitration in lieu of the right to strike. L. Bingham, "Midterm Bargaining Disputes and Binding Arbitration of Public Sector Employees," 17 Conn. L. Rev. 365, 375 (1985). At the arbitration sessions, the parties can stipulate to facts and offer evidence. *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 508, 522 A.2d 264 (1987); L. Bingham, supra, 380. Further, the statute requires that the arbitrator incorporate agreements negotiated prior to the final award. General Statutes § 10-153f (c) (4); J. Clentano & L. Williamson, Jr., "Primer on Educator Collective Bargaining in Connecticut," 17 Conn. L. Rev. 307, 340 (1985). Thus, the legislature intended continued negotiations throughout the arbitration hearings and after the hearings are concluded, prior to the issuance of the award.

The trial court correctly found that the FOIC improperly and illegally subjected the arbitration hearings to the FOIA.

The judgment is affirmed.

In this opinion FREEDMAN, J., concurred.

SCHALLER, J., dissenting. This appeal involves the right of the public to attend a hearing conducted by an arbitration panel involving a contract dispute between the Glastonbury education association and the Glastonbury board of education. The arbitration hearing was held when the parties failed to settle their contract dispute during the negotiation and mediation phases of collective bargaining. Because I believe the right of the public to be present at that hearing, as ordered by the freedom of information commission (FOIC), is supported by existing statutory and decisional law, I respectfully dissent.

My conclusions differ from those of the majority with respect to three fundamental issues: (1) the withholding of deference to the FOIC; (2) the interpretation and application of legislative history to the pertinent statutes; and (3) the lack of acknowledgment of the persuasive authority of the Supreme Court decision on an analogous situation in *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 190, 470 A.2d 1209 (1984).

I

The majority has determined that the deference usually afforded an administrative agency; see *Levanti* v. *Dow Chemical Co.,* 218 Conn. 9, 15–16, 587 A.2d 1023 (1991); *Borent* v. *State,* 33 Conn. App. 495, 499, 636 A.2d 392 (1994); should not be accorded to the FOIC in this case because the FOIC has interpreted General Statutes § 1-18a (b) in a manner inconsistent with its previous interpretation of the same statute in *Radford* v. *Trumbull,* Docket No. FIC 79-246 (1980). I do not characterize the decision in *Radford* so as to require the withholding of deference in the present case. The issue before the hearing officer in *Radford* was a narrow one; namely, whether the specific last best offer submitted by the negotiator for the board of education was exempt from disclosure under General Statutes § 1-19 (b) (9). The FOIC adopted the finding of its hearing officer that the last best offer in question was a "record or statement of strategy or negotiations with respect to collective bargaining" and, therefore, exempt. The hearing officer also found that Public Acts 1979, No. 79-405, "permits the collective bargaining process to continue during the arbitration procedure and after the submission of the last best offers of the parties to the arbitrators."

The decision in *Radford*—involving the disclosure of a single document consisting of a particular last best

offer—cannot be said to be inconsistent with the FOIC decision in the case before us. This case involves an issue of far greater scope than did *Radford.* Involved here is the issue of whether the public may be excluded from the *entire arbitration hearing.* The arbitration statute pertaining to the hearing provides "[a]t the hearing, each party shall have full opportunity to submit all relevant evidence, to introduce relevant documents and written material, and to argue on behalf of its position." General Statutes § 10-153f (c) (2). The hearing involves the presentation of evidence and argument, in addition to the presentation of last best offers. Because the FOIC's decision in *Radford* is not inconsistent with its decision in this case, I believe that the FOIC should be given the usual deference with respect to its decision in this matter.

## II

The majority relies on legislative history for assistance in interpreting the "intent of the legislature as to whether the arbitration proceedings are exempt from the FOIA [Freedom of Information Act, General Statutes § 1-15 et seq.]" based on the conclusion that "[i]t is facially unclear from the statutory language whether arbitration proceedings are subject to the FOIA under General Statutes § 1-21."

Our Supreme Court has stated that it is "mindful when inspecting the statutory text that the intent of the legislature is to be found not in what it meant to say but in what it did say. *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 549–50, 494 A.2d 564 (1985). When the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987)." (Internal quotation marks omitted.) *Winslow* v. *Lewis-Shepard,*

*Inc.,* 216 Conn. 533, 537–38, 582 A.2d 1174 (1990). In my view, the statutory language of § 1-18a (b) is plain and unambiguous with respect to the issue with which we are concerned, namely, whether the term meeting applies to all or part of the collective bargaining process. Section 1-18a (b) quite clearly excludes, not *collective bargaining in general,* but "*strategy or negotiations with respect to collective bargaining."* (Emphasis added.) On the basis of the statutory language itself, the legislature did not exclude the *entire* collective bargaining process. Had the legislature wished to do so, it could easily have used the term collective bargaining alone in § 1-18a (b).

During the FOIC hearing in this case, in fact, testimony was presented indicating that matters involving strategy or negotiations could arise during the arbitration hearing. The FOIC order adequately provided for the eventuality that strategy and negotiations, in addition to testimony, presentation of evidence, and argument, would occur during the arbitration hearing. Clearly, the parties would be entitled to recess the *public* hearing for the purpose of conducting negotiations or strategy discussions in *private.* The FOIC found that the purpose of this particular hearing was to allow the board and the GEA each to present "a 'last best contract' offer and to submit evidence and argument on behalf of their positions" and that the "respondent panel's hearings may and often do lead to further negotiation . . . ."

In my view, therefore, there is no need to look to legislative history to illuminate this issue.[1] I conclude,

---

[1] Looking at the legislative history, however, it is revealing that Representative Martin Burke, in addition to making the remarks quoted by the majority, went on to say: "It was thought that *the give-and-take in negotiating sessions of collective bargaining* was much too sensitive to require that this be done in public." (Emphasis added.) 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3896. That statement clarifies that the legislative concern was with "the

therefore, that the statutory language is clear and that only strategy or negotiations with respect to collective bargaining is excluded by General Statutes § 1-18a (b). The FOIC order correctly and thoroughly addressed this issue.

## III

In General Statutes § 1-18a (b), the term "meeting" is broadly defined to include "any hearing or other proceeding of a public agency . . . ." The arbitration hearing phase of the collective bargaining process unmistakably falls within this definition of meeting and the narrow exclusion does not apply to the entire arbitration hearing. At the outset, I note that General Statutes § 10-153f (c) (2) refers to the arbitration procedure as a hearing. That statute provides in pertinent part that "[t]he chairperson of the arbitration panel or the single arbitrator shall set the date, time and place for a hearing to be held in the school district . . . . At the hearing each party shall have full opportunity to submit all relevant evidence, to introduce relevant documents and written material, and to argue on behalf of its positions. . . . The chairperson of the arbitration panel or the single arbitrator shall preside over such hearing." General Statutes § 10-153f (c) (2).

As the FOIC correctly argues, there can be no question that the statutory language of § 10-153f (c) (2) meshes with the general definition of hearing previously recognized by our Supreme Court as well as this court. *Herman* v. *Division of Special Revenue,* 193 Conn. 379, 382–83, 477 A.2d 119 (1984); *Leabo* v. *Leninski,* 9 Conn. App. 299, 302, 518 A.2d 667, cert.

give-and-take in negotiating sessions of collective bargaining"; id.; rather than with the entire process. The conclusion that the legislature excluded only "strategy or negotiations with respect to collective bargaining"; id., p. 3897; from public access, with the hearing itself subject to the FOIA, is neither internally inconsistent nor in conflict with the provisions of the Teacher Negotiation Act.

denied, 202 Conn. 806, 520 A.2d 1286 (1986). The term hearing refers to a " '[p]roceeding of relative formality . . . generally public, with definite issues of fact and law to be tried . . . .' " *Herman* v. *Division of Special Revenue,* supra, 382–83; *Leabo* v. *Leninski,* supra, 302.

Given the above interpretation of the term hearing, the decision of our Supreme Court in *Board of Police Commissioners* v. *Freedom of Information Commission,* supra, 192 Conn. 183, involving an analogous situation, provides persuasive authority to uphold the FOIC decision rendered in this case. In *Board of Police Commissioners,* our Supreme Court examined the application of General Statutes § 1-21, which provides that "[t]he meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public." That case involved the following factual scenario: a police officer was summoned to appear before the board due to an alleged violation of a departmental rule. *Board of Police Commissioners* v. *Freedom of Information Commission,* supra, 186. The hearing was open to the public. After the presentation of testimony and arguments, the board left the room to consider the charges against the officer. Id. The officer claimed, however, that during these deliberations, the board considered "such evidence as his personnel file and some comments which had not been presented at the open hearing . . . ." Id., 190.

The court held that General Statutes § 1-21 "must. be construed to mandate that the 'hearing' portion of an administrative proceeding, where evidence and arguments are presented, be open to the public." The court further held that the term "executive session," in "the context of this case, did not authorize the presentation of additional evidence during the 'discussion' of [the officer's] case by the board." Id., 190–91. The court remanded the case for further proceedings because the FOIC failed to make any findings with

regard to the officer's assertions that the board had improperly considered evidence that was presented behind closed doors.

The decision in *Board of Police Commissioners* supports the appropriateness of the FOIC order in this case. The testimony presented at the FOIC hearing reveals that the process of recessing the hearing format for the purpose of discussing strategy is well established and actually occurs.[2] It is not difficult to envision that recessing for the purpose of negotiating can occur, as well.

My position is further supported by the general purpose and construction of the FOIA as set forth by our Supreme Court, which has repeatedly stated that the FOIA " ' "expresses a strong legislative policy in favor of the open conduct of government and free public access to its records." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328, 435 A.2d 353 [1980].' *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980); see also *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 431, 518 A.2d 49 (1986); *Board of Police Commissioners* v. *Freedom of Information Commission,* [supra, 192 Conn. 188]." *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 266, 579 A.2d 505 (1990). The Supreme Court also has noted that the "construction of the FOIA must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed. *Ottochian* v. *Freedom of Information Commission,* 221 Conn. 393, 398,

---

[2] At the FOIC hearing, the following colloquy ensued between Kathleen Stack, one of the complainants, and Donald Deneen, a member of the arbitration panel:

"[Stack]: [B]ut if [the parties] want to compare offers or modify offers, would they do that in discussions before [the arbitration panel] or do they do that someplace else?

"[Deneen]: Usually the parties individually caucus, not together, and decide whether they want to change position or not."

604 A.2d 351 (1992); *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 233, 602 A.2d 1019 (1992); *Lieberman* v. *State Board of Labor Relations,* [supra, 216 Conn. 266]; *Board of Police Commissioners* v. *Freedom of Information Commission,* [supra, 188]." *Superintendent of Police* v. *Freedom of Information Commission,* 222 Conn. 621, 626, 609 A.2d 998 (1992). The FOIC order provides a correct and realistic approach to the situation presented by this case, while ensuring that the important, overriding policy considerations behind the FOIA are respected.

Because I believe the FOIC properly determined that the arbitration hearing is subject to the FOIA, I would reverse the judgment of the trial court.

Accordingly, I respectfully dissent.