STATE BOARD OF LABOR RELATIONS *v.* FREEDOM
OF INFORMATION COMMISSION ET AL.
(14410)

STATE BOARD OF MEDIATION AND ARBITRATION
*v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(14411)

Foti, Landau and Schaller, Js.

Argued April 1—officially released September 17, 1996

*Mitchell W. Pearlman*, general counsel, with whom,
on the brief, was *Cynthia A. Christ*, law student intern,
for the appellant (named defendant in each case).

*Joseph M. Celentano*, general counsel, for the appel-
lee (named plaintiff in the first case).

*Laurie Adler*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellee (named plaintiff in the second case).

*Jason W. Cohen*, with whom, on the brief, was *J. William Gagne, Jr.*, for the appellee (Council 4, AFS-CME, AFL-CIO, defendant in the second case).

*M. Jeffry Spahr*, Norwalk deputy corporation counsel, pro se, the appellee (defendant in the first case).

LANDAU, J. The defendant freedom of information commission (FOIC)[1] appeals from the judgments[2] of the trial court sustaining the administrative appeals of the plaintiffs from a decision by the FOIC. On appeal,[3] the FOIC claims that the trial court improperly found that (1) grievance arbitration hearings before the board of mediation and arbitration (mediation board) are not meetings within the meaning of General Statutes § 1-18a (b)[4] and (2) parties to a grievance arbitration hearing do not have the right, pursuant to General Statutes § 1-21a (a),[5] to tape-record the proceedings. The FOIC also

[1] The defendants in the first action are the FOIC and M. Jeffry Spahr, deputy corporation counsel for the city of Norwalk. The defendants in the second action, are the FOIC, Spahr and Council 4, AFSCME, AFL-CIO, which is the city of Norwalk police union. Only the FOIC has appealed.

[2] The trial court rendered two judgments in which it sustained the administrative appeals brought separately by the state board of mediation and arbitration and the state board of labor relations.

[3] The two appeals brought by the defendant are separate. Because the issues raised are identical, however, the defendant was permitted to file a consolidated brief. We will refer to both appeals in the singular.

[4] General Statutes § 1-18a (b) provides in pertinent part: " 'Meeting' means any hearing or other proceeding of a public agency . . . . 'Meeting' shall not include . . . strategy or negotiations with respect to collective bargaining . . . ."

[5] General Statutes § 1-21a (a) provides in pertinent part: "At any meeting of a public agency which is open to the public, pursuant to the provisions of section 1-21, proceedings of such public agency may be recorded, photographed, broadcast or recorded for broadcast, subject to such rules as such public agency may have prescribed prior to such meeting, by any person or by any newspaper, radio broadcasting company or television broadcasting

claims that, in so finding, the trial court based its conclusion on facts not contained in the record and substituted its judgment for that of the FOIC. We disagree and affirm the judgments of the trial court.

The record discloses the following factual and procedural history. On January 28, 1991, M. Jeffry Spahr, deputy corporation counsel for the city of Norwalk (city), requested an advisory opinion, pursuant to General Statutes § 4-176 (a),[6] from the FOIC regarding the propriety of the mediation board's policy of refusing to permit the parties to an arbitration proceeding to tape-record such proceedings. Spahr's request was precipitated by the ruling of an arbitrator who presided over a grievance arbitration proceeding between the city and the police union, and would not permit Spahr to tape-record the proceedings.

In his letter to the FOIC, Spahr contended that, because the mediation board was a public agency within the meaning of § 1-18a (a),[7] and because arbitration hearings are public meetings within the meaning of General Statutes § 1-21 (a),[8] the "clear and unambiguous provisions" of § 1-21a (a) apply to grievance arbitration hearings and thereby render illegal the board's policy of refusing to permit the parties to a mediation board

company. Any recording, radio, television or photographic equipment may be so located within the meeting room as to permit the recording, broadcasting either by radio, or by television, or by both, or the photographing of the proceedings of such public agency. . . ."

[6] General Statutes § 4-176 (a) provides in pertinent part: "Any person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of an agency."

[7] General Statutes § 1-18a (a) provides in pertinent part: " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state . . . ."

[8] General Statutes § 1-21 (a) provides in pertinent part: "(a) The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. . . ."

hearing to tape-record the proceedings. The FOIC granted Spahr's request and conducted a hearing on July 30, 1991. At the hearing, the state board of labor relations appeared and was granted permission by the FOIC to intervene as an interested party. Both boards contended that grievance arbitration proceedings are not subject to the recording provisions of the Freedom of Information Act (act), General Statutes § 1-15 et seq.

Subsequently, on February 19, 1992, the FOIC issued a ruling in which it concluded that "arbitration hearings are neither strategy nor negotiation sessions" with respect to collective bargaining and that "the Board's policies prohibiting the tape recording of its arbitration hearings violate, and are superseded by, the provisions of the [act]." The FOIC also concluded that, although arbitration hearings are public meetings within the meaning of the act, the board "may certainly convene in executive session in those instances permitted under [the act]." The FOIC decided that the request for an advisory opinion did not necessitate a finding as to "whether a tape recording of an arbitration hearing, kept by the Board, is subject to public disclosure under [the act]."

Although the mediation board and the board of labor relations appealed separately to the Superior Court, the trial court consolidated the appeals because they involved the same administrative proceeding. On January 6, 1995, the court issued separate memoranda of decision sustaining the boards' appeals. In the mediation board's appeal, the court concluded, inter alia, that "arbitration hearings are not meetings within the purview of § 1-18a (b)" and ordered the FOIC's advisory opinion "set aside, vacated and rescinded." The trial court sustained the appeal of the board of labor relations "for the reasons recited" in the related appeal.

I

The FOIC first claims that the trial court improperly determined that grievance arbitration proceedings conducted by the mediation board, pursuant to General Statutes § 31-91 et seq., are not public meetings within the meaning of the act and are, therefore, not governed by the act. The FOIC argues that grievance arbitration proceedings fall within the definition of a public meeting pursuant to § 1-18 a (b) because they are not "strategy or negotiations with respect to collective bargaining . . . ."[9] In contrast, the boards contend that grievance arbitration proceedings are labor disputes that necessarily involve negotiations and strategy discussions related to the collective bargaining process and, as such, do not constitute public meetings. They argue, therefore, that grievance arbitration proceedings are not subject to the recording provisions of the act.

We begin by setting forth our standard of review. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, § § 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant." (Citations omitted; internal quotation marks omitted.) *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988). "Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Id., 774.]

[9] See footnote 4.

Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980). . . . *Perkins* v. *Freedom of Information Commission*, [228 Conn. 158, 164–65, 635 A.2d 783 (1993)]. . . . *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995)." (Internal quotation marks omitted.) *Hartford* v. *Freedom of Information Commission*, 41 Conn. App. 67, 72–73, 674 A.2d 462 (1996).

With these principles in mind, we now consider whether the trial court properly vacated the FOIC's ruling. The trial court relied on this court's holding in *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 35 Conn. App. 111, 118–19, 634 A.2d 1320 (1994), aff'd, 234 Conn. 704, 663 A.2d 349 (1995), to support its finding that "the current appellate law is that arbitration hearings are not meetings within the meaning of § 1-18a (b) . . . that arbitration hearings are 'continued negotiations' and therefore not subject to the [act]." In *Glastonbury*, we were called on to determine whether binding arbitration proceedings, conducted pursuant to General Statutes § 10-153a et seq., are subject to the open meeting provisions of the act. Id. In doing so, we interpreted the language of § 1-18a (b) and held that, given the legislative history of the act, "the legislature intended the term meeting [as found in § 1-18a (b)] not to apply to any part of the collective bargaining process." Id., 118.

Nevertheless, the FOIC argues that *Glastonbury* does not control here. Rather, the FOIC contends that *Glastonbury* is a narrow holding, limited to its facts, because there is a distinction between binding arbitration proceedings, which involve the negotiation process aimed at the settlement of labor contracts, and the grievance arbitration proceedings at issue here, which involve disciplinary actions with "hearings for the formal presentation of evidence and argument before an empowered decision maker." The FOIC concedes that while, in the former instance binding arbitration proceedings are strategy or negotiation sessions that are properly part of collective bargaining and are, thus, exempt under §1-18a (b), in the latter instance, grievance arbitration proceedings are "quasi-judicial" in nature and, although part of the collective bargaining process, do not involve strategy or negotiations and should, therefore, be open to the public. The FOIC relies on *Bloomfield Education Assn.* v. *Frahm*, 35 Conn. App. 384, 391, 646 A.2d 247, cert. denied, 231 Conn. 926, 648 A.2d 161 (1994), for the proposition that § 1-18a (b) does not exclude collective bargaining in general from the definition of meeting, but rather only those sessions that exclusively constitute strategy or negotiations. The FOIC's reliance on the decision in *Bloomfield* is misplaced.

In *Bloomfield*, we concluded that the trial court properly upheld the FOIC's determination that the *filing of a grievance* is not exempted from disclosure under *§ 1-19 (b) (9)* of the act because it is does not constitute a record, report or statement of strategy or negotiations with respect to collective bargaining. Id. We reasoned that, "[a]lthough grievances may be the subject of collective bargaining, the mere filing of a grievance, standing alone, and containing limited information . . . does not reveal any strategy or negotiations involved in the collective bargaining process." Id., 388. We further

stated that the filing of a grievance "does not discuss a proposed settlement and therefore does not contain negotiations." Id., 391. Thus, the holding in *Bloomfield* is premised on the rationale that only that part of the grievance process that does *not* involve strategy or negotiations must be disclosed.

With respect to the grievance arbitration proceedings at issue here, however, *Bloomfield* necessarily implies that a different result is necessary. Because grievance arbitration proceedings are labor disputes, the parties will necessarily engage in strategy and continued negotiations with respect to the underlying collective bargaining agreement. See *National Labor Relations Board* v. *City Disposal Systems, Inc.*, 465 U.S. 822, 831–32, 104 S. Ct. 1505, 79 L. Ed. 2d 839 (1984); *United Steelworkers* v. *Warrior Navigating Co.*, 363 U.S. 574, 578, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 493, 628 A.2d 946 (1993). "Strategy is defined as a careful plan or method and the art of devising or employing plans or stratagems toward a goal. . . . Negotiations is a broad term, not in all connotations a term of art, but in general it means the deliberation which takes place between the parties touching a proposed agreement . . . the deliberation, discussion, or conference on the terms of a proposed agreement; a treating with another with a view to coming to terms . . . . Negotiations look to the future . . . ." (Citations omitted; internal quotation marks omitted.) *Bloomfield Education Assn.* v. *Frahm*, supra, 35 Conn. App. 390.

We conclude that grievance arbitration proceedings, as their binding arbitration counterpart, do involve strategy and negotiations with respect to collective bargaining; *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 35 Conn. App. 118–19; and, therefore, are not public meetings within the meaning of the act. Id. Accordingly, we hold that

the trial court properly determined that the FOIC's conclusion that grievance arbitration proceedings are subject to the recording provisions of the act is contrary to law.

## II

Our inquiry does not end here because the FOIC also claims that the trial court "failed to exercise the judicial restraint required in these cases." Specifically, the FOIC asserts that the trial court made "extra-record findings of fact"[10] in violation of the standard of review set forth in General Statutes § 4-183 (i) through (j). The FOIC's claim refers only to the portion of the court's memorandum of decision in which it opined that the mediation board's regulations,[11] on which the board claims authority to limit the recording of its hearings, is not unreasonable. Our review of the record, however, reveals that the appeal presented to the trial court did not concern the legality of the board's regulations. Rather, the dispositive issue presented to the trial court was "whether a party to [a mediation board] hearing has the right *under General Statutes § 1-21a (a)* to tape-record the proceedings." (Emphasis added.) Thus, any findings by the court directed at the regulations of the mediation board is mere surplusage. Moreover, because the record before this court reveals that the trial court's findings of fact are

---

[10] The FOIC asserts that the court made the following findings of fact that are not supported by the record: (1) "stenographic recording is quiet and orderly"; (2) "the record is being compiled by a certified competent reporter unlikely to impair its integrity"; (3) "certified copies can be made readily available without concern for tampering or mistakes"; and (4) "a transcript duly certified is less likely than a recorded taping to raise errors in the transcript of the record."

[11] Section 31-91-30 of the Regulations of Connecticut State Agencies provides in pertinent part: "The board does not provide a stenographic service during arbitration hearings. If either or both parties feel it is necessary to have their respective arbitration hearings recorded, they should make the necessary arrangements with a private reporting service at their own expense. . . ."

based on substantial evidence found in the administrative record, we conclude that the trial court properly applied the appropriate standard of judicial review.

The judgments are affirmed.

In this opinion the other judges concurred.