# STATE BOARD OF LABOR RELATIONS v. FREEDOM OF INFORMATION COMMISSION ET AL.

# STATE BOARD OF MEDIATION AND ARBITRATION v. FREEDOM OF INFORMATION COMMISSION ET AL.

## (SC 15565)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued January 15—officially released April 14, 1998

*Victor R. Perpetua*, appellate counsel, with whom, on the brief, were *Mitchell W. Pearlman*, general counsel, and *Justine C. Rakich-Kelly* and *Joan M. Andrews*, commission counsel, for the appellant (freedom of information commission).

*Laurie Adler*, assistant attorney general, with whom were *Jaye Bailey Zanta*, *Jason W. Cohen* and, on the brief, *Richard Blumenthal*, attorney general, *Charles A. Overend*, assistant attorney general, and *Joseph M. Celentano*, for the appellees (state board of labor relations, state board of mediation and arbitration, and AFSCME, Council 4, AFL-CIO).

*Opinion*

KATZ, J. The sole issue to be decided in this certified appeal is whether grievance arbitration proceedings before the plaintiff state board of mediation and arbitration (mediation board)[1] are excluded from the definition of "meeting" set forth in General Statutes § 1-18a (b)[2]

---

[1] The mediation board, established pursuant to General Statutes § 31-91, performs the duties of conciliation, mediation and arbitration for the purpose of resolving labor disputes. General Statutes § 31-93.

[2] General Statutes § 1-18a (b) provides: " 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall not include: Any meeting of a personnel search committee for executive level employment candidates; any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business; strategy or negotiations with respect to collective bargaining; a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency; an administrative or staff meeting of a single-member public agency; and communication limited

of the Freedom of Information Act (act); General Statutes § 1-7 et seq.; either because they involve strategy or negotiation with respect to collective bargaining, or because the confidentiality requirement of General Statutes § 31-100[3] precludes the proceedings from being open to the public. The defendant, M. Jeffrey Spahr, deputy corporation counsel for the city of Norwalk, a party to a grievance arbitration pending before the mediation board, sought permission to tape-record the arbitration proceedings. When the mediation board denied him permission, Spahr requested, pursuant to General Statutes § 4-176,[4] that the named defendant, the freedom of information commission (commission),[5] issue an advisory opinion regarding the legality of the mediation board's policy prohibiting the tape-recording of grievance arbitration proceedings. The commission issued an advisory opinion on February 26, 1991, pursuant to General Statutes § 4-176 (e),[6] concluding that the

to notice of meetings of any public agency or the agendas thereof. 'Caucus' means a convening or assembly of the enrolled members of a single political party who are members of a public agency within the state or a political subdivision."

[3] General Statutes § 31-100 provides: "Annual report. Confidential information. Said board [of mediation and arbitration] shall, as provided in section 4-60, make a report to the Governor and shall include therein statements of such facts and explanations as will disclose the actual doings of the board and such suggestions as to legislation as seem to it conducive to harmony in the relations between employers and employees. The board shall hold confidential all information submitted to it by any party to a labor dispute and shall not reveal such information unless specifically authorized to do so by such party."

[4] General Statutes § 4-176 (a) provides in relevant part: "Any person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of an agency."

[5] In addition to Spahr and the commission, Council 4, AFSCME, AFL-CIO was also named as a defendant in the second case. Only the commission, however, has appealed.

[6] General Statutes § 4-176 (e) provides: "Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the

mediation board's policy constituted a violation of the act. The mediation board, and the intervening plaintiff, the state board of labor relations (labor relations board), appealed from the decision reached by the commission in its advisory opinion to the trial court in two separate appeals pursuant to General Statutes §§ 4-176 (h), 4-183, and 1-21i (d). The trial court sustained the appeals, and rendered judgments ordering that the advisory opinion be set aside, vacated and rescinded. The commission appealed from the trial court judgments to the Appellate Court, which affirmed the judgments. *State Board of Labor Relations* v. *Freedom of Information Commission*, 43 Conn. App. 133, 682 A.2d 1068 (1996). Thereafter, we granted the commission's petitions for certification limited to the following issue: "Did the Appellate Court properly conclude that grievance arbitration proceedings before the state board of mediation and arbitration are not 'meetings' within the meaning of General Statutes § 1-18a (b)?" *State Board of Labor Relations* v. *Freedom of Information Commission*, 239 Conn. 940, 684 A.2d 712 (1996).[7] We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the relevant facts and procedural history. "On January 28, 1991, M. Jeffrey Spahr, deputy corporation counsel for the city of Norwalk (city), requested an advisory opinion . . . from the [commission] regarding the propriety of the mediation board's policy of refusing to permit the parties to an arbitration proceeding to tape-record such proceedings. Spahr's request was precipitated by

---

provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reason for its action."

[7] Because the issues raised in each appeal are identical, we have consolidated the appeals for the purposes of this opinion.

the ruling of an arbitrator who presided over a grievance arbitration proceeding between the city and the police union, and would not permit Spahr to tape-record the proceedings.

"In his letter to the [commission], Spahr contended that, because the mediation board was a public agency within the meaning of § 1-18a (a),[8] and because arbitration hearings are public meetings within the meaning of General Statutes § 1-21 (a),[9] the 'clear and unambiguous provisions' of [General Statutes] § 1-21a (a)[10] apply to grievance arbitration hearings and thereby render illegal the [mediation] board's policy of refusing to permit the parties to a mediation board hearing to tape-record the proceedings. The [commission] granted Spahr's request and conducted a hearing on July 30, 1991. At the hearing, the [labor relations board] appeared and was granted permission by the [commission] to intervene as an interested party. Both boards contended that grievance arbitration proceedings are not subject to the recording provisions of the [act], General Statutes § 1-15 et seq.

"Subsequently, on February 19, 1992, the [commission] issued a ruling in which it concluded that 'arbitration hearings are neither strategy nor negotiation sessions' with respect to collective bargaining and that

---

[8] General Statutes § 1-18a (a) provides in relevant part: " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state . . . ."

[9] General Statutes § 1-21 (a) provides in relevant part: "The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. . . ."

[10] General Statutes § 1-21a (a) provides in relevant part: "At any meeting of a public agency which is open to the public, pursuant to the provisions of section 1-21, proceedings of such public agency may be recorded, photographed, broadcast or recorded for broadcast, subject to such rules as such public agency may have prescribed prior to such meeting, by any person or by any newspaper, radio broadcasting company or television broadcasting company. . . ."

'the [mediation board's] policies prohibiting the tape recording of its arbitration hearings violate, and are superseded by, the provisions of the [act].' The [commission] also concluded that, although arbitration hearings are public meetings within the meaning of the act, the [mediation] board 'may certainly convene in executive session in those instances permitted under [the act].' The [commission] decided that the request for an advisory opinion did not necessitate a finding as to 'whether a tape recording of an arbitration hearing, kept by the [mediation board], is subject to public disclosure under [the act].'

"Although the mediation board and the [labor relations board] appealed separately to the Superior Court, the trial court consolidated the appeals because they involved the same administrative proceeding. On January 6, 1995, the court issued separate memoranda of decision sustaining [their] appeals. In the mediation board's appeal, the court concluded, inter alia, that 'arbitration hearings are not meetings within the purview of § 1-18a (b)' and ordered the [commission's] advisory opinion 'set aside, vacated and rescinded.' The trial court sustained the appeal of the [labor relations board] 'for the reasons recited' in the related appeal." *State Board of Labor Relations* v. *Freedom of Information Commission,* supra, 43 Conn. App. 135–36.

In its appeals to this court, the commission claims that the Appellate Court improperly concluded that grievance arbitration proceedings conducted by the mediation board pursuant to General Statutes § 31-91 et seq. are not public meetings within the meaning of § 1-18a (b)[11] and, therefore, are not governed by the recording provisions of the act. Specifically, the commission argues that grievance arbitration proceedings

---

[11] See footnote 2 of this opinion.

are not excluded from the definition of a meeting pursuant to § 1-18a (b) as strategy or negotiations with respect to collective bargaining. Conversely, the mediation board and the labor relations board contend that grievance arbitration proceedings are labor disputes that necessarily involve negotiations and strategy discussions related to the collective bargaining process and, as such, are excluded from the definition of meetings under § 1-18a (b).

Further, the mediation board and the labor relations board contend that alternate grounds exist upon which the Appellate Court judgment may be affirmed. In that regard, they argue that even if grievance arbitration proceedings do not involve strategy or negotiation so as to exclude them from the definition of meetings under § 1-18a (b), such proceedings in any event are not meetings because § 31-100[12] exempts them from the open meeting requirements of the act. The commission concluded, in its advisory opinion, however, that § 31-100 does not exempt grievance arbitration proceedings from the open meeting requirements of the act. Neither the trial court nor the Appellate Court addressed whether and to what extent § 31-100 bears upon the issue in this case. We conclude that § 31-100 exempts grievance arbitration proceedings from the open meeting requirements of the act, and that as a result such proceedings are not meetings within the meaning of § 1-18a (b). Therefore, we do not address the commission's first argument.

The standard of review in appeals from the decisions of administrative agencies is clearly delineated. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189) and the scope of that review is very restricted." (Internal

---

[12] See footnote 3 of this opinion.

quotation marks omitted.) *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988). "With regard to questions of fact, it is neither the function of the trial court nor of this court 'to retry the case or to substitute its judgment for that of the administrative agency.'" *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). "Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) Id. "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Citation omitted; internal quotation marks omitted.) Id. "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." *New Haven* v. *Freedom of Information Commission*, supra, 774.

In this case, whether grievance arbitration proceedings are meetings within the meaning of § 1-18a (b) is a matter of statutory interpretation and, as such, constitutes a question of law. *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996). Specifically, the statutory scheme upon which the commission relies in arguing that grievance arbitration proceedings are public meetings that the mediation board must allow to be recorded involves a number of interrelated statutory provisions, not all of which are charged to the commission for enforcement. Therefore, we do not accord any special deference to the commission's interpretation of the

overall statutory scheme. *Doe* v. *Stamford*, 241 Conn. 692, 697, 699 A.2d 52 (1997). Instead, our analysis is guided solely by the traditional, well established principles of statutory construction that apply in all cases turning upon the interpretation of statutes.

"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 240 Conn. 317, 327, 692 A.2d 713 (1997). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [we] presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996). "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." (Internal quotation marks omitted.) *State* v. *Ayala*, 222 Conn. 331, 346, 610 A.2d 1162 (1992). Statutes are to be construed "in a manner that will not thwart [their] intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 319, 702 A.2d 1180 (1997). "The law favors a rational statutory construction and we presume that the legislature intended a sensible result." *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985).

The provisions upon which the commission primarily relies are §§ 1-18a, 1-21, and 1-21a. Section 1-18a (b) defines "meeting" as "any hearing or other proceeding

of a public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power." The provision excludes from that definition, however, any "strategy or negotiations with respect to collective bargaining . . . ." Section 1-21 (a) provides in relevant part that "[t]he meetings of all public agencies . . . shall be open to the public . . . ." Section 1-21a (a) provides in relevant part that "[a]t any meeting of a public agency which is open to the public . . . proceedings of such public agency may be recorded . . . by any person . . . ."

The commission contends that grievance arbitration proceedings are meetings as that term is defined by § 1-18a (b), and that, therefore, they must be open to the public pursuant to § 1-21 (a), and may be recorded by any person pursuant to § 1-21a (a). It is apparent from the plain language of these provisions that, if the grievance arbitration proceedings at issue here constitute meetings within the meaning of § 1-18a (b), they must be open to the public and recording must be allowed. Therefore, the plaintiffs' second argument essentially raises the question of whether, in light of the requirement of § 31-100 that the mediation board hold confidential all information submitted to it by the parties to a labor dispute, the proceedings constitute meetings that necessarily would be open to the public. For a number of reasons, we conclude that the confidentiality requirement of § 31-100 exempts grievance arbitration proceedings from the definition of meetings set forth in § 1-18a (b).

First, an obvious conflict would arise between § 31-100 and § 1-21 (a) if we were to conclude that grievance arbitration proceedings are meetings within the definition of § 1-18a (b). Section 31-100 requires the mediation board to "hold confidential all information submitted to it by any party to a labor dispute . . . ." Neither that section nor any other provision of chapter 560 of the

General Statutes, which governs the mediation board, defines the term "information." In the absence of a statutorily provided definition, however, "words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1. In its commonly used form, "information" includes orally imparted communications as well as communications that are written or recorded. See Webster's Third New International Dictionary ("information" is "knowledge communicated by others or obtained from investigation [or] study"; to "communicate" is to "speak, gesticulate, or write to another to convey information"). Therefore, we interpret § 31-100 to require that the mediation board hold confidential all information submitted to it orally at grievance arbitration proceedings, as well as all information submitted to it in written or recorded form. It follows that if grievance arbitration proceedings are meetings within the meaning of § 1-18a (b), the confidentiality requirement of § 31-100 will directly conflict with the open meeting requirement of § 1-21 (a), and it will be impossible for the mediation board to adhere to one provision without violating the other. Section 31-100, therefore, provides a strong indication that grievance arbitration proceedings are not to be conducted publicly. In turn, that result indicates that grievance arbitration proceedings are not meetings, because meetings, pursuant to § 1-21 (a), must be open to the public.

Although the commission suggests that § 31-100 should be interpreted to require only that written and recorded submissions to the board be held confidential, we do not find that argument persuasive. First, we can conceive of no legal or logical reason to distinguish between written and recorded submissions and information conveyed orally. In *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 35 Conn. App. 111, 117 n.10, 643 A.2d 1320 (1994), aff'd,

234 Conn. 704, 663 A.2d 349 (1995), the Appellate Court found that there is "no legal difference between a written document and the same information in oral form," and determined that "[c]onstancy and logic demand that they be treated in the same manner." We agree with that conclusion.

Second, even if we were to interpret § 31-100 as requiring only that written and recorded information submitted to the mediation board be held confidential, it would nevertheless be impossible to maintain the confidentiality of that information if grievance arbitration proceedings were conducted publicly. Much of the information conveyed orally during the proceedings can be expected to be identical to information submitted in written or recorded form. As a result, the substance of the written or recorded submissions likely would be revealed publicly through oral repetition of the same information if the grievance arbitration proceedings were open to the public. In that case, no purpose would be served by the confidentiality requirement of § 31-100, because the protection afforded the written or recorded information would be defeated when that same information was subject to disclosure at the proceedings. Such a result would violate the well established principles of statutory construction that statutes must be interpreted under the assumption that the legislature "did not intend to enact meaningless provisions"; (internal quotation marks omitted) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 347, 680 A.2d 1261 (1996); and "that no part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." (Internal quotation marks omitted.) *State* v. *Ayala*, supra, 222 Conn. 346.

An interpretation of the statutory scheme that would have § 1-21 (a) defeat the confidentiality purpose of

§ 31-100 would also violate another well settled rule of statutory construction, namely, that "[s]tatutes are to be construed consistently with other relevant statutes, because we presume that the legislature intended to create a coherent body of law." (Internal quotation marks omitted.) *In re Bruce R.*, 234 Conn. 194, 207, 662 A.2d 107 (1995). Specifically, in reconciling apparently conflicting statutory provisions, we presume that subsequent enactments were enacted in light of already existing relevant statutes as part of a consistent body of law. *Caulkins* v. *Petrillo*, 200 Conn. 713, 718, 513 A.2d 43 (1986). Section 31-100 predates the first public meetings act, No. 468 of the 1957 Public Acts, from which § 1-21 (a) derives.[13] In addition, neither the first public meetings act nor any of its subsequent amendments refer to § 31-100. Therefore, we infer that § 1-21 (a) was not intended to overrule the confidentiality requirement of § 31-100. Accordingly, in order to interpret the act consistently with § 31-100, which predates the act, we conclude that grievance arbitration proceedings are not meetings under § 1-18a (b) that, pursuant to § 1-21 (a), must be open to the public.

Our interpretation is further supported by the fact that an untenable result would follow if we were to conclude that grievance arbitration proceedings are meetings to which both § 31-100 and § 1-21 (a) apply. Because we have already determined that in that situation the two provisions would directly conflict, making it impossible for the mediation board to abide by both directives, we reasonably cannot presume that such an irrational result could have been intended by the legislature. "[I]f there are two possible interpretations of a statute [or statutory scheme] and one alternative proves unreasonable or produces the possibility of

[13] Section 31-100 was enacted in 1949; see General Statutes (1949 Rev.) § 7387; while the first public meetings act, No. 468 of the 1957 Public Acts, was passed in 1957.

bizarre results, then the more reasonable alternative should be adopted." *State* v. *Parmalee*, supra, 197 Conn. 165. In this case, the only interpretation of the statutory scheme that is reasonable is that grievance arbitration proceedings are not meetings under § 1-18a (b).

Finally, this interpretation furthers the goals of the legislation that provides for the grievance arbitration process before the mediation board, without impeding in any way the legislature's intent in enacting General Statutes § 1-15 et seq. General Statutes § 31-97 provides for the submission of grievances and disputes between an employer and an employee to the mediation board for resolution upon payment of a $25 filing fee. The testimony at trial indicated that the low cost associated with this method of conflict resolution is a major factor motivating parties to choose arbitration before the mediation board over private arbitration, which they are also free to choose. It is not disputed that arbitration conducted with private arbitrators may be closed to the public. If proceedings before the mediation board were required to be conducted publicly, there would be a significant difference between arbitration before that body and privately conducted arbitration. Indeed, the testimony at trial indicated that requiring proceedings before the mediation board to be open to the public would create a significant deterrent to parties considering arbitration before the mediation board. This, in turn, would work to defeat the legislature's goal of providing low cost arbitration services as an effective alternative to private arbitrators to facilitate the resolution of labor disputes.

Concomitantly, an interpretation of § 1-18a (b) that excludes grievance arbitration proceedings from the definition of meetings does not impede the goals underlying the act. The act was enacted for the purpose of assuring public access to information relating to the activities of public agencies. Although the legislature

specifically exempted certain types of activities from the definition of meeting under § 1-18a (b), it did not specifically mention grievance arbitration proceedings in that subsection. We presume, however, that it enacted § 1-18a (b) with knowledge of the existence of § 31-100. *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, supra, 238 Conn. 337. It is reasonable to conclude, therefore, that the legislature decided that the benefit associated with the confidentiality of grievance arbitration proceedings outweighed the benefit to be derived from granting public access to these proceedings, and, consequently, it did not amend or overrule § 31-100 so as to include grievance arbitration proceedings within the definition of meeting under § 1-18a (b). Thus, the exclusion of grievance arbitration proceedings from the definition of meeting is within the contemplation of the act.

In the advisory opinion it issued in this matter, the commission based its conclusion that § 31-100 does not exempt grievance arbitration proceedings from the open meeting requirements of the act upon the fact that neither § 31-100 nor any other statute explicitly provides that such proceedings are not to be open to the public, and there is nothing further in chapter 560, governing mediation and arbitration before the mediation board, to so indicate. In light of our preceding discussion, however, we do not find the absence of an explicit statement that the proceedings are to be closed to the public to be dispositive. The explicit requirement of confidentiality is sufficient to compel that result.

The commission also noted that it could not locate any cases addressing the applicability of § 31-100 to grievance arbitration proceedings and did not believe that it made sense to apply § 31-100 to the proceedings due to the fact that both sides present evidence during the proceedings that is seen and heard by the other side. The fact that each party will be exposed to the

other party's evidence during the proceedings does not mean that no purpose can be served by the confidentiality requirement. Here, it is the public that the mediation board and the labor relations board seek to exclude from the proceedings, not an opposing party to a labor dispute.

We conclude that § 31-100 excludes grievance arbitration proceedings before the mediation board from the definition of meeting provided for in § 1-18a (b) of the act.[14] Therefore, the open meeting requirements of § 1-21 (a) and the recording provisions of § 1-21a (a) of the act are inapplicable to such proceedings.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

___

[14] In this opinion, we determine only that grievance arbitration proceedings are not meetings under § 1-18a (b), and that the declaratory ruling of the commission is, therefore, not binding. We do not address whether the mediation board's policy of prohibiting the tape-recording of such proceedings is appropriate pursuant to § 31-100.