[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff; Bruce John, appeals from the decision of a hearing officer in the Department of Social Services (DSS) upholding the Department of Administrative Services' (DAS) claim of a lien against the proceeds of a civil case filed by the plaintiff. Pursuant to General Statutes §§ 17b-93 and 17b-94, the DAS Bureau of Collection Services placed a lien on the plaintiff's cause of action as reimbursement for Aid to Families with Dependent Children (AFDC) benefits paid by the DSS to the plaintiff's former wife, Pamela John, and his daughter, Mia John. On April 15, 1999, the plaintiff appealed the decision of the hearing officer pursuant to General Statutes § 4-183.
The decision of the hearing officer was mailed on March 20, 1999. CT Page 15350 (Return of Record [ROR], Volume I, p. 7.) The plaintiff served the DSS on April 12, 1999, by leaving the appeal papers with Rosa Ficocelli, administrative assistant, at the DSS commissioner's office in Hartford and with Jane S. Scholl, assistant attorney general, at the attorney general's office in Hartford. (Sheriff's Return.) The appeal was filed with the clerk of the Superior Court in the judicial district of Tolland on April 15, 1999.
On May 10, 1999, the commissioner of the DSS filed a notice of submission of record pursuant to General Statute § 4-183(g). The DSS filed an answer on June 3, 1999. The plaintiff filed a memorandum in support of the administrative appeal on July 15, 1999. The DSS filed a memorandum of law on September 2, 1999. The plaintiff filed a reply to the DSS's memorandum on September 16, 1999. The appeal was heard by this court on November 20, 2000.
The following facts are undisputed. The plaintiff and his former wife, Pamela John, were divorced on June 19, 1989. (ROR, Volume 1, p. 33.) The divorce decree provided for joint custody of their child, Mia John, with shared residence between the plaintiff and Pamela John. (ROR, Volume I, p. 34.) During the period from June, 1997, through February, 1998, Pamela and Mia John received $3,827.98 in AFDC benefits. (ROR, Volume I, p. 2.) On March 31, 1998, the plaintiff filed a personal injury action against Angelo Luciani in the Superior Court. (ROR, Volume I, p. 1.) The DAS placed a lien on the plaintiff's cause of action on October 20, 1998. (ROR, Volume I, p. 2.) The DAS notified the plaintiff on November 5, 1998, that reimbursement was sought in the amount of $3,827.98 for AFDC benefits paid by the DSS to Pamela and Mia John. (ROR, Volume I, p. 2.) The plaintiff challenged the lien on his cause of action and requested a fair hearing pursuant to General Statutes § 17b-60 on November 12, 1998. (ROR, Volume I, p. 45.)
The hearing was held on December 22, 1998. (ROR, Volume I, p. 1.) The hearing record was left open for three weeks. (ROR, Volume I, p. 1.) By final decision dated March 18, 1999, the hearing officer upheld the decision by the DAS to place a lien on the plaintiff's recovery in that lawsuit. (ROR, Volume I, p. 5.) The hearing officer based this decision on General Statutes §§ 17b-93 and 17b-94. (ROR, Volume I, p. 5.)
The plaintiff challenges the decision on the grounds that the DSS acted arbitrarily, illegally, and in abuse of its discretion in denying the plaintiff's appeal. (Complaint, ¶ 6.) The plaintiff claims that evidence in the record supported the plaintiff's position that Mia John did not reside with Pamela John during the time in which Pamela John recieved AFDC benefits and thus Mia John was not the beneficiary of the AFDC benefits. (Complaint, ¶¶ 3-4.) The plaintiff alleges that Pamela CT Page 15351 John improperly received the benefits because Mia John was not living with or supported by Pamela John. (Plaintiff's Memorandum in Support of Administrative Appeal, p. 3.)
"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." (Internal quotation marks omitted.) Water Pollution Control Authority v.Keeney, 234 Conn. 488, 492, 662 A.2d 124 (1995). Section 4-183(a) governs appeals from decisions by the DSS. General Statutes § 17b-61(b). General Statutes § 4-183(a) provides that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section."
 I
"Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact. . . . Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal." (Citations omitted; internal quotation marks omitted.) Water PollutionControl Authority v. Keeney, supra, 234 Conn. 493. "The test for determining aggrievement is a two part inquiry: [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . ." (Citations omitted; internal quotation marks omitted.) Id., 494.
In the present case, the plaintiff has demonstrated a specific and personal legal interest in the subject matter of the decision because it is the plaintiff's cause of action on which the DAS has placed a lien. The second part of the test is satisfied because the decision of the DSS hearing officer upheld the lien placed on the plaintiff's property. Consequently, the plaintiff is aggrieved.
 II
"The standard of review in appeals from the decisions of administrative agencies is clearly delineated. Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189) and the scope of CT Page 15352 that review is very restricted." (Brackets omitted; internal quotation marks omitted.) State Board of Labor Relations v. Freedom of InformationCommission, 244 Conn. 487, 493-94, 709 A.2d 1129 (1998). "With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Citations omitted; internal quotation marks omitted.) Id., 494.
General Statutes § 4-183(j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties JointVenture, L.P. v. Commissioner of Env. Protection, 253 Conn. 661, 676,757 A.2d 1 (2000). "The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes §4-183(j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . ." (Citations omitted; internal quotation marks omitted.) Id. Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent CT Page 15353 an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Id.
The DSS held a hearing on December 22, 1998, to determine the validity of the lien placed by the DAS Bureau of Collection of Services on the plaintiff's cause of action. The hearing officer held that the decision by the DAS to place a lien on plaintiff's cause of action was correct based on General Statutes §§ 17b-93 and 17b-94. (ROR, Volume I, p. 5.) The hearing officer found that "the [plaintiff] is responsible for repaying the state assistance given to assistance unit comprised of his former spouse and child." (ROR, Volume I, p. 2.) The hearing officer also stated that "it is correct to lien the future net proceeds of the lawsuit for the $3,827.98 in AFDC benefits received and not reimbursed." (ROR, Volume I, p. 2.)
The plaintiff claims that the DSS acted "illegally, arbitrarily, and in abuse of discretion vested to it." (Complaint, ¶ 6.) The plaintiff claims that Mia John was not a beneficiary of AFDC benefits in that she did not reside with Pamela John, and thus the AFDC benefits paid by the DSS to Pamela John were improper. (Complaint, ¶ 3.) The plaintiff also claims that the evidence in the record "factually and legally supported [the] [p]laintiff's position." (Complaint, ¶ 4.)
 A
The plaintiff argues that Mia John does not fit the definition of"dependent child" in General Statutes § 17b-75. (Plaintiff's Memorandum in Support of Administrative Appeal, p. 2.) The plaintiff claims that "the record of the hearing makes it clear that Mia John was not being deprived of parental care, and the parent she was living with was providing all of the support necessary." (Plaintiff's Memorandum in Support of Administrative Appeal, pp. 2-3.) The plaintiff also argues that General Statutes § 17b-77 clearly indicates that application for AFDC benefits can only be made by the "supervising relative". (Plaintiff's Memorandum in Support of Administrative Appeal, p. 2.) The plaintiff claims that AFDC benefits paid to Pamela John were improper because Mia John was living with the plaintiff. (Plaintiff's Memorandum in Support of Administrative Appeal, p. 3.) The plaintiff also argues that "[t]here is no showing that these benefits were in any way used to support or care for the minor child." (Plaintiff's Memorandum of Law in Support of Administrative Appeal, p. 3.)
The DSS argues that General Statutes § 17b-75 and § 17b-77 do not require the DSS to show that AFDC benefits were actually paid to a "needy child" or "supervising parent" before they can seek reimbursement from the plaintiff. (Defendant's Memorandum of Law, p. 6.) The DSS argues CT Page 15354 that "[t]here is simply no express or implied provision in § 17b-93, § 17b-75, § 17b-77, or any other statute requiring the department to establish that a dependent child actually received benefits or that it was the supervising relative who actually applied for benefits before seeking reimbursement from either parent." (Defendant's Memorandum of Law, p. 6.)
General Statutes § 17b-75 defines a "dependent child" as "a needy child under the age of eighteen . . . who has been deprived of parental support or care by reason of death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother . . . or any other relative approved by the commissioner in a place of residence maintained by one or more of such relatives as his or their own home." The statute was revised by Public Act, Spec. Sess., June 18, 1997, No. 97-2, § 25. The effective date of the public act was July 1, 1997. The court will look at the version in effect prior to the amendment because the AFDC recipient, Pamela John, began receiving benefits in June 1997. General Statutes § 17b-77 provides that "application, in the case of aid to dependent children, shall be made by the supervising relative, his authorized representative, or, in the case of an individual who is incapacitated, someone acting responsibly for him and shall contain the name and the exact residence of such applicant, the name, the place and date of birth of each dependent child, the Social Security number of the supervising relative and of each dependent child and such other information as is required by the commissioner." The statute was revised by Public Act, Spec. Sess., June 18, 1997, No. 97-2, § 27. The effective date of the public act was July 1, 1997. The court will look at the version in effect prior to the amendment because the AFDC recipient, Pamela John, began receiving benefits in June 1997.
The record indicates that Pamela John did not represent herself as the supervising parent under General Statutes § 17b-77 or Mia John as a dependent child under General Statutes § 17b-75. The record shows that Pamela John informed the DSS that Mia was not living with her when she applied for benefits. Pamela John testified on the record "[w]hen I applied for assistance I was very explicit at the fact that Mia was being cared for by my ex-husband and that I had her on weekends and in the summers." (ROR, Volume II, p. 15.) Pamela John also stated that she needed the money for food for Mia John on the weekends. (ROR, Volume II, p. 16.) Based on the information provided by Pamela John, the DSS determined that Pamela John was eligible for AFDC benefits and paid those benefits to her.
The plaintiff claims that the DSS did not comply with General Statutes §§ 17b-75 and 17b-77 because Mia John has always lived with him and he CT Page 15355 has provided all of her support. The record shows, however, that the plaintiff and Pamela John share joint custody of Mia John and that Pamela John does provide some support for Mia John. There is evidence in the record that Mia John predominantly lived with her father, but there is also evidence in the record that she stayed with her mother on weekends and in the summers.
The record does not support the plaintiff's claims that the AFDC benefits were not used for the support or care of Mia John. At the fair hearing, the plaintiff stated on the record numerous times that Pamela John did help support their child. The plaintiff testified that "[s]he needed the money to feed her baby on the weekends and like you said there is not necessarily fraud involved if there is joint custody but that is for you people to decide." (ROR, Volume II, p. 13.) The plaintiff also stated on the record that "[b]ecause of joint custody, Pamela has paid for half of her braces and has bought her some clothes [at] various times and obviously feeds her and takes good care of her on the weekends when she is with her." (ROR, Volume II, p. 8.) In addition to the plaintiff's statements on the record that he and Pamela John have joint custody of Mia John, the divorce decree provides for joint custody of Mia John with shared residence between the plaintiff and Pamela John. (ROR, Volume 1, pp. 33-42.)
The application of General Statutes §§ 17b-75 and 17b-77 does not affect the determination by the hearing officer that the lien placed on the plaintiff's cause of action was correct. The hearing officer's determination that Pamela and Mia John were beneficiaries of AFDC payments by the DSS is supported by the record. Additionally, the record shows that the AFDC benefits paid to Pamela John were used to support Mia John. Therefore, that the hearing officer's determination that the plaintiff is responsible for repaying the DSS for benefits received by Pamela and Mia John was correct.
 B
The plaintiff admits that Pamela John received AFDC benefits from the state. (Plaintiff's Memorandum in Support of Administrative Appeal, p. 1.) The plaintiff; however, argues that the hearing officer totally ignored whether these benefits were for the benefit of Mia John and reimbursable by the plaintiff. (Plaintiff's Memorandum in Support of Administrative Appeal, p. 1.) The DSS argues that the parents of an AFDC beneficiary are jointly and severally liable, regardless of which parent received the benefits. (Defendant's Memorandum of Law, p. 6.)
General Statutes § 17b-93(a) provides in pertinent part that "theparents of an aid to dependent children beneficiary . . . shall be liable CT Page 15356 to repay, subject to the provisions of section 17b-94, to the state the full amount of any such aid paid to or in behalf of either parent, hisspouse, and his child or children. The state of Connecticut shall have a lien against property of any kind of the parents of an aid to dependentchildren beneficiary. . . ." (Emphasis added.) According to the plain language of the statute the parents of an AFDC beneficiary shall be liable for repayment of any such aid paid to either parent or to the child.
General Statutes § 17b-94(a) provides in pertinent part that "[i]n the case of causes of action of beneficiaries of aid under the . . . aid to families with dependent children program . . . or of a parent of abeneficiary of the aid to families with dependent children program . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty percent of the proceeds received by such beneficiary or such parent. . . ." (Emphasis added.) The statute clearly allows the state to place of lien on causes of action by the AFDC beneficiary or the parent of an AFDC beneficiary.
The hearing officer found that "the appellant's former spouse and child are former recipients of State assistance." (ROR, Volume I, p. 2.) The statement of assistance showing the amounts paid to Pamela John from June 24, 1997, to February 1, 1998, supports this finding of fact by the hearing officer. (ROR, Volume!, pp. 13-16.) Additionally, the testimony of the plaintiff and of Pamela John supports the finding by the hearing officer that the AFDC payments were for the benefit of both Pamela and Mia John. The plaintiff states "if she applied for assistance for her and to feed the daughter on the weekends she obviously needed it at the time. I am not disputing that." (ROR, Volume II, p. 9.) Pamela John stated that she "needed money for food for [Mia] on the weekends because I was pretty much tapped out." (ROR, Volume II, p. 16.)
The record supports the finding by the hearing officer that Pamela and Mia John received AFDC benefits. The plaintiff is liable under § 17b-93
for the repayment of AFDC benefits received by Pamela and Mia John. Accordingly, the hearing officer's decision to uphold the lien placed on the plaintiff's cause of action pursuant to General Statutes §§ 17b-93
and 17b-94 was not an abuse of the hearing officer's discretion and is supported by the record.
 C
The plaintiff also argues that the DSS must pursue its remedies under General Statutes § 17b-88 because the DSS improperly paid AFDC benefits to Pamela John. (Plaintiff's Memorandum in Support of Administrative Appeal, p. 3.) The DSS argues that "there is simply no CT Page 15357 requirement in § 17b-93 or in any other statute requiring the Department to pursue recovery of public assistance overpayments [or] benefits fraudulently obtained from the parent receiving the overpayment or committing the fraud before collecting from the other parent." (Defendant's Memorandum of Law, p. 9.)
General Statutes § 17b-88 provides "[i]f a beneficiary of assistance under the . . . aid to families with dependent children program . . . receives any award or grant over the amount to which he is entitled under the laws governing eligibility, the Department of Social Services (1) shall immediately initiate recoupment action and shall consult with the Division of Criminal Justice to determine whether to refer such overpayment, with full supporting information, to the state police to a prosecuting authority for prosecution or to the Attorney General for civil recovery or (2) shall take such other actions as conforms to federal regulations, including, but not limited to, conducting administrative disqualification hearings for cases involving alleged fraud in the . . . aid to families with dependent children program. . . ."
General Statutes §§ 17b-88, 17b-93 or 17b-94 do not contain any requirement that the DSS pursue remedies against the recipient of overpayment of benefits or the recipient of benefits obtained through fraud before placing a lien on property for the reimbursement of AFDC benefits. Additionally, Superior Court cases have held that the DSS has no obligation to pursue fraudulently received benefits before seeking reimbursement for AFDC benefits under General Statutes §§ 17b-93 and17b-94.
In Colavolpe v. Department of Social Services, Superior Court, judicial district of New Haven at New Haven, Docket No. 389003 (May 27, 1997,Maloney, J.) (19 Conn.L.Rptr. 549, 550), the plaintiff claimed that his former wife had fraudulently received AFDC payments and that rather than placing a lien on the plaintiff's cause of action, the DSS should pursue repayment from his former wife pursuant to General Statutes § 17b-97. "That statute provides that any person who obtains public assistance by fraudulent means is guilty of larceny. It also provides that the department may bring a civil action to recover the amount of any public assistance so received. The statute does not, however, require the department to exhaust that remedy before pursuing other means of obtaining reimbursement of amounts of public assistance. Specifically, neither § 17b-97 nor § 17b-93 provides that the department must pursue its remedy for fraud before it may pursue its remedy under the lien procedure. In short, the department is not obligated to sue the mother for fraud before it collects from the father's newly acquired assets." Id., 550. CT Page 15358
In Maldonado v. State of Connecticut, Department of Social Services, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 322762 (August 4, 1998, McWeeny, J.), the DSS placed a lien on the plaintiff's cause of action. The plaintiff claimed his wife fraudulently received AFDC benefits while working and during the time his daughter resided with him. Id. The court found "that the evidence of fraud did not overcome the evidence of payment or presumption that the AFDC payments were valid. Public officials are presumed to have done their duty until the contrary is demonstrated. Leib v. Board of Examiners for Nursing,177 Conn. 78, 87 (1979)." Id. The court held that "[t]he DSS was not obligated to pursue a fraud claim before collecting from the plaintiff." Id.
Based on the foregoing analysis, the DSS need not pursue remedies against Pamela John for improper receipt of AFDC payments before seeking reimbursement from the plaintiff. The hearing officer was correct in determining that the plaintiff is responsible for reimbursing the DSS for AFDC benefits received by Pamela and Mia John regardless of whether those benefits were fraudulently received. The appeal is, therefore, dismissed.
Sferrazza, J.